630 F.2d 1073
 80-2 USTC P 9804
 UNITED STATES of America and James S. Rogers, Special Agent,
Internal Revenue Service, Plaintiffs-Appellants,
v.
Henry J. JONES, Defendant-Appellee,
James Royce Horton and Shirley Ann Horton,
Intervenors-Defendants-Appellees.
 No. 78-3260.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 19, 1980.
 
 Charles E. Brookhart, William A. Whitledge, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Tax Div., Dept. of Justice, Washington, D. C., for plaintiffs-appellants.
 Potts, Young & Blasingame, Robert L. Potts, Florence, Ala., for Hortons.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before JONES, GEE and REAVLEY, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 This is an appeal from an order of the district court denying enforcement of a summons issued by the Internal Revenue Service under I.R.C. § 7602(2) (26 U.S.C. § 7602(2)).[1] The summons directed Henry Jones, a certified public accountant, to give testimony and produce documents relating to the federal tax liability of James and Shirley Horton for the years 1974, 1975 and 1976. The district court concluded that although the documents and records in question were in the physical custody of Jones, they remained in the constructive possession of the Hortons and were, therefore, privileged material under the Fifth Amendment and not subject to compelled disclosure. We reverse.
 
 Facts
 
 2
 The Hortons, who own and operate a small restaurant business and an apparel shop in Red Bay, Alabama, were randomly selected by the IRS for an audit in 1977 to determine their income tax liabilities for the years 1975 and 1976. Revenue Agent Paul Williams requested, and the Hortons voluntarily produced, their records and documents pertaining to these years at the office of their accountant, Jerry Fancher. On three or four occasions beginning in the latter part of July, Agent Williams examined and copied portions of the taxpayers' records, which were unorganized and contained in four huge garbage bags. Williams concluded from his inspection that the taxpayers had understated their income by approximately $25,000 for each year, and he so informed the Hortons on August 23, 1977.
 
 
 3
 Thereafter, the Hortons hired Jones, who specializes in settling income tax disputes with the IRS, to assist them with their tax problems. The Hortons delivered their records contained in the four garbage bags to Jones and told him they were the same ones Agent Williams had partially examined at Fancher's office. Jones had at least one conference with Williams, but could reach no settlement. Subsequently, Williams referred the case to the Criminal Investigation Division of the IRS. A fraud investigation was authorized, and Special Agent Rogers was assigned to the case, which became a joint investigation under his direction.
 
 
 4
 Agent Rogers expanded the investigation to include the Hortons' 1974 tax liabilities. He and Agent Williams met with the taxpayers and Jones on January 30, 1978, at which time Rogers requested to see the records. The Hortons refused to allow this, but confirmed that Jones now had the records. Rogers issued a summons to Jones, requiring production of documents and records for the tax years of 1974, 1975 and 1976. The Hortons, pursuant to I.R.C. § 7609 (26 U.S.C. § 7609 (Supp.1980)),[2] instructed Jones not to comply with the summons. Agent Rogers then petitioned the district court for an order enforcing the summons. The district court granted the Hortons' motion to intervene under § 7609.
 
 
 5
 In contesting the summons, the taxpayers asserted that the records sought to be examined were their personal, private papers protected by the Fifth Amendment privilege against self-incrimination. Also, they contended, notwithstanding their Fifth Amendment argument, that the summons could not be enforced because they were not notified in writing that any additional inspection to the one conducted by Agent Williams was necessary, which violated I.R.C. § 7605(b) (26 U.S.C. § 7605(b)).[3]
 
 The Fifth Amendment Claim
 
 6
 We are not here confronted with the issue of "whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession ...." Fisher v. United States, 425 U.S. 391, 413, 96 S.Ct. 1569, 1582, 48 L.Ed.2d 39 (1976). Here the question is whether the taxpayers' proprietary interest enables them to assert successfully a privilege against compulsory self-incrimination to bar enforcement of the summons for production of their tax records, despite the fact that the records were no longer in their possession. The Supreme Court has answered this question in the negative.[4] Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).
 
 
 7
 In Couch, the Court held that the Fifth Amendment privilege against self-incrimination was not available to prevent enforcement of an IRS summons where the taxpayer had effectively surrendered possession of the records sought to be inspected to her accountant.[5] The Court reasoned that "the Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not the information that may incriminate him." Couch, 409 U.S. at 328, 93 S.Ct. at 615. Moreover, "(c)ompulsion upon the person asserting it (the taxpayer) is an important element of the privilege ...." Id. In this case, as in Couch, "the ingredient of personal compulsion against an accused is lacking." Id. at 329. The summons here, as in Couch, is directed against the accountant, who is not the taxpayers' personal employee, but an independent contractor. It is he, not the taxpayers, who is compelled to produce the records. Accountant Jones makes no claim that he may tend to be incriminated by production of the Hortons' records. Coercion against the taxpayers, compelling them against their will, "to utter self-condemning words or produce incriminating documents is absent." Id.
 
 
 8
 In holding that the taxpayers' Fifth Amendment privilege would bar enforcement of the summons herein, the district court relied on the following language contained in Couch :
 
 
 9
 "Petitioner argues, nevertheless, that grave prejudice will result from a denial of her claim to equate ownership and the scope of the privilege. She alleges that '(i)f the IRS is able to reach her records the instant those records leave her hands and are deposited in the hands of her retainer whom she has hired for a special purpose then the meaning of the privilege is lost.' That is not, however, the import of today's decision. We do indeed believe that actual possession of documents bears the most significant relationship to Fifth Amendment protections against governmental compulsions upon the individual accused of crime. Yet situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact. But this is not the case before us. Here there was no mere fleeting divestment of possession: the records had been given to this accountant regularly since 1955 and remained in his continuous possession until the summer of 1969 when the summons was issued. Moreover, the accountant himself worked neither in petitioner's office nor as her employee. The length of his possession of petitioner's records and his independent status confirm the belief that petitioner's divestment of possession was of such a character as to disqualify her entirely as an object of any impermissible Fifth Amendment compulsion." 409 U.S. at 333-35, 93 S.Ct. at 618-19. (Emphasis added).)
 
 
 10
 Although noting that Jones had the status of an independent contractor and that he was given possession of the records for the specific purpose of settling the Hortons' tax liabilities, the district court found the following facts to be significant in distinguishing this case from Couch : (1) Jones was not the Hortons' regular accountant; (2) he had been in possession of the records for a relatively short period of time-five to six months had elapsed between the time Jones received the Hortons' tax records and the time the summons was issued; (3) Jones had not reviewed and studied the records in any detail, if at all;[6] (4) the records were still in the garbage bags and were, for all practical purposes, in the same condition as they were in when turned over to Jones; (5) Jones had not organized the records and put them in working order with his own work product; and (6) he had discussed the settlement of the Hortons' tax liabilities only in a preliminary way with the IRS. Under these circumstances, the district court concluded that the Hortons retained constructive possession of the records and, therefore, that their Fifth Amendment privilege barred enforcement of the summons.
 
 
 11
 We do not believe the facts of this case establish the type of "constructive possession" to which Justice Powell was referring in the Couch opinion. First, even though Jones had possessed the Hortons' records for only five or six months before the summons was issued, this is not the "mere fleeting divestment of possession" contemplated by the Court to demonstrate a taxpayer's constructive possession of records in the hands of another. For example, the accountant in Couch had undoubtedly possessed some of the records sought by the IRS for no longer than eight months prior to the issuance of the summons.[7] The "fleeting" loss of possession that might prevent enforcement of an IRS summons, if the privilege against self-incrimination were asserted, is illustrated by the hypothetical posed during the oral argument in Couch, in which possession by the owner of a briefcase is lost momentarily while he was being helped across the street. See Couch, 409 U.S. at 333 n. 15, 93 S.Ct. at 618; accord, In re Horowitz, 482 F.2d 72, 86 (2d Cir. 1973). Jones' possession of the Hortons' records can hardly be considered "fleeting" since they were delivered to him several months before the summons was issued.
 
 
 12
 Second, when the Court recognized that "situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave compulsions upon the accused substantially intact," Couch, 409 U.S. at 333, 93 S.Ct. at 618, it cited as examples of such instances Schwimmer v. United States, 232 F.2d 855 (8th Cir. 1956) and United States v. Guterma, 272 F.2d 344 (2d Cir. 1959). In both of these cases, the records and files sought by the Government were on the premises of the subpoenaed party, but were within the actual control of the person under investigation who later asserted the Fifth Amendment privilege.[8] In Schwimmer and Guterma, the claimants of the privilege merely stored their papers and files with third party corporations for custodial safekeeping. Although physically on the premises of a third party, the records and files in each case remained in the constructive possession of their owners who retained the right to their immediate possession. The corporations were merely custodial bailees or "naked possessors," who had no knowledge of the contents of the records in their custody and were not to use them for any purpose. Therefore, at least where there has been no "fleeting divestment of possession," we conclude that constructive possession of personal records for purposes of asserting the privilege against self-incrimination exists only when "the taxpayer has placed papers in the hands of another person or entity for custodial safekeeping, thereby, retaining the right to immediate possession though not having actual possession." United States v. White, 477 F.2d 757, 763 (5th Cir. 1973), aff'd on rehearing en banc, 487 F.2d 1335, cert. denied, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). The concept of "storage for custodial safekeeping" contemplates that the custodian is neither intended to make use of the papers deposited with him, Stuart v. United States, 416 F.2d 459, 462-63 (5th Cir. 1969), nor expected to have knowledge of their contents, In re Horowitz, 482 F.2d at 86 n. 19.
 
 
 13
 In this case, Jones had complete access to the Hortons' records. Moreover, the record reflects that Jones had some knowledge of the contents of the records since he was familiar enough with them to discuss with Agent Williams the problem of determining the amount of tax liability based on the records.[9] Most importantly, the records were delivered to Jones with the intent and expectation that he make use of them in settling the Hortons' tax liabilities with the IRS.[10] See Stuart, 416 F.2d at 462-63. In view of these facts, it cannot be said that accountant Jones was simply the Hortons' custodial bailee, with whom they stored their records only for safekeeping, or that he was a mere "naked possessor." Jones had both actual possession and complete access to the Hortons' records. These facts are inconsistent with their claim of constructive possession. In re Horowitz, 482 F.2d at 87.
 
 
 14
 In view of these facts, we conclude that the essential ingredient of personal compulsion against the Hortons, without which their Fifth Amendment claim necessarily founders, is lacking in the record before us. United States v. White, 477 F.2d at 762.
 
 The Second Inspection Claim
 
 15
 Because the district court ruled in the taxpayers' favor on the Fifth Amendment claim, it did not reach their contention that the enforcement of the summons should be denied because written notice was not given to them of the necessity of an "additional inspection" of their records in compliance with I.R.C. § 7605(b) (26 U.S.C. § 7605(b)).[11] The Hortons argue that the examination of their records by Agent Williams constituted a "first inspection" and that the attempted examination by Agent Rogers would constitute a "second inspection" of their records for the taxable years in question, which is prohibited by § 7605(b) unless preceded by written notice from the Secretary of the Treasury or his delegate. We conclude that since a "first inspection" was never completed because an ongoing investigation was in progress, the IRS was not required to notify the taxpayers in writing that it would be necessary for Agent Jones to examine their records on January 30, 1978.
 
 
 16
 In United States v. Garrett, 571 F.2d 1323, 1328-29 (5th Cir.1978), we held that when an IRS investigation has not been completed, a subsequent examination of a taxpayer's books and records does not constitute a second inspection within the meaning of § 7605(b). There we indicated that § 7605(b) would defeat an IRS summons to inspect the taxpayer's books and records only if the taxpayer had refuted the Government's contentions that an investigation of the records for the year in question had not been closed and that no meaningful examination of the records had been made. See also United States v. Schwartz, 469 F.2d 977, 985-86 (5th Cir. 1972).
 
 
 17
 We agree with the decision of the Seventh Circuit in United States v. Gilpin, 542 F.2d 38, 40 (7th Cir. 1976), which held that "no second inspection notice is required (under § 7605(b)) if it is factually established that the Agent involved had not completed his examination when he referred the case to a Special Agent for further investigation."[12] In the present case, Agent Williams testified that when he made his referral to the Criminal Investigation Division, he had not completed his investigation into the Hortons' liability for the 1975 and 1976 tax years. In view of these uncontroverted facts, we conclude that the summons herein was part of an ongoing investigation that had commenced with Agent Williams' audit in July and August of 1977, that the audit had not been completed when the matter was referred to Special Agent Rogers of the Criminal Investigation Division, and that, therefore, the "additional inspection" provisions of § 7605(b) are inapplicable.[13]
 
 
 18
 The judgment of the district court is reversed, and the case is remanded with instructions to grant enforcement of the IRS summons.
 
 
 19
 REVERSED AND REMANDED.
 
 
 
 [1]
 I.R.C. § 7602 (26 U.S.C. § 7602) provides:
 Examination of books and witnesses
 For the purpose of ascertaining correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect to any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized
 (1) To examine any books, papers, records or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
 
 
 [2]
 I.R.C. § 7609 (26 U.S.C. § 7609 (Supp.1980)) provides in pertinent part:
 Special procedures for third-party summonses
 (a) Notice.-
 (1) In general.-If-
 (A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and
 (B) the summons requires the production of any portion of records made or kept of the business transactions or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons,
 then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2).
 (3) Third-party recordkeeper defined.-For purposes of this subsection, the term "third-party recordkeeper" means-
 (F) any accountant.
 (b) Right to intervene; right to stay compliance.-
 (1) Intervention.-Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.
 (2) Right to stay compliance.-Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a) (2)-
 (A) notice in writing is given to the person summoned not to comply with the summons, and
 (B) a copy of such notice not to comply with the summons is mailed by registered or certified mail to such person and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).
 (c) Summons to which section applies.-
 (1) In general.-Except as provided in paragraph (2), a summons is described in this subsection if it is issued under paragraph (2) of section 7602 ... and requires the production of records.
 
 
 [3]
 I.R.C. § 7605(b) (26 U.S.C. § 7605(b)) provides:
 Restrictions on Examination of Taxpayer.
 No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of the taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
 
 
 [4]
 Of course, we recognize that this question may not be answered in the negative where the records are in the possession of the taxpayer's attorney. For example, if a taxpayer, who would be privileged from producing certain documents in his possession, either at common law or under the Fifth Amendment, delivered them to an attorney for the purpose of securing legal advice, then in such a case the taxpayer would be able to intervene under § 7609 to bar enforcement of an IRS summons directed at the attorney, which sought inspection of the documents now in the attorney's possession. Fisher, 425 U.S. at 402-405, 96 S.Ct. at 1576-1578
 
 
 [5]
 See Fisher, 425 U.S. at 397, 96 S.Ct. at 1574, wherein the Court stated:
 "In Couch v. United States ... we recently ruled that the Fifth Amendment rights of a taxpayer were not violated by the enforcement of a documentary summons directed to her accountant and requiring production of the taxpayer's own records in the possession of the accountant. We did so on the ground that in such a case 'the ingredient of personal compulsion against an accused is lacking.' " (Emphasis added.)
 
 
 [6]
 This finding may be somewhat erroneous since the evidence reflects only that Jones did not review the records in question in connection with the preparation of any of the tax returns for the years 1974, 1975 and 1976. This does not mean that Jones did not review the records in connection with the purpose for which he was hired, i. e. to attempt to settle the dispute over the Hortons' income tax liabilities with the IRS. The only evidence contained in the record relevant to whether or not Jones reviewed the Hortons' records is found in Jones' response to the Government's petition to enforce the summons and in Jones' testimony adduced during the hearing on the petition. In his response to the Government's petition, Jones stated:
 "The respondent further admits that he has failed to give testimony or produce documents in this case, on the grounds of a letter he received from James R. Horton and Shirley Horton .... Respondent has been advised and asserts that the said persons had a right to stay compliance with the summons under 26 U.S.C. § 7609(b)(2), and therefore he was justified in not complying with said summons until this matter has been judicially determined. Respondent admits that he has physical custody of certain documents that were brought to his office in the latter part of 1977 in several garbage bags by the taxpayers involved, James R. Horton and Shirley Horton, but affirmatively alleges that he has not reviewed or used said records in connection with the preparation of any of the tax returns in question in this proceeding. Respondent was employed to repare (sic) James R. Horton and Shirley Horton's 1977 tax returns, but this was after the investigation began herein and the said investigation does not cover the year 1977, nor does the subpoena issued herein cover documents relating to said year." (Emphasis added.)
 During the hearing on the Government's petition to enforce the summons, Jones testified as follows:
 "Q Have you been-what use have you put the records that were delivered to you or in what form are they in your office at the present time?
 A (Jones) Basically the same form in which they were delivered in the garbage bags and file drawers.
 Q Did Mr. Horton tell you these were the same records that Mr. Williams had gone through several days in Mr. Fancher's office?
 A Yes, sir.
 Q Do you have any records for the year 1974 to your knowledge?
 A No.
 Q What years do the records in your office and in your custody relate to?
 A 1975 and 1976.
 Q Did you have any discussion with Mr. Williams in an attempt to negotiate a civil resolution to this investigation?
 A Yes, I did.
 Q Did he refuse to proceed with those negotiations?
 A No, he did not refuse to.
 A What was-what transpired with regard to the negotiations?
 A I went down to his office or in the conference room there at the Revenue Department and told him that I had been employed by the Hortons to try to resolve their tax difficulty ..... We had some discussions as to the problem in trying to determine Mr. Horton's income from the records that had been available to Mr. Williams. I told him that we realized there was not exactly formal records and that it would be difficult to work with them and we were interested in trying to reach a settlement with them as to what the taxable income might be based upon the gross revenue of the business, base it on purchases, base it on salaries or any other accepted way to try to arrive at a taxpayers taxable income and adequate records in an accounting sense of the word.
 Q And what was his response to that?
 A His response as I recall was that he would be interested in seeing any factual information that I had that would show him to be in error."
 
 
 [7]
 The Court noted that the taxpayer had delivered her records to the accountant regularly since 1955 and that the records remained in his continuous possession until the summer of 1969 when the IRS summons was issued. Couch, 409 U.S. at 334, 93 S.Ct. at 618. However, the IRS was conducting an investigation of Mrs. Couch's tax liability from 1964 to 1968. The earliest, then, that she could have delivered all the records for the 1968 tax year would have been on January 1, 1969. The return date on the summons was September 2, 1969. Therefore, the accountant could have been in possession of some of the records dealing with the 1969 tax year for, at most, about eight months
 
 
 [8]
 In Schwimmer, an attorney appealed an order denying his motion to quash two subpoenas duces tecum issued in a grand jury investigation. The attorney, who had retired from active practice and moved out of state, placed his office files in storage with a rubber manufacturing company. The subpoenas to produce the files, which were contained in four cardboard boxes and four filing cabinet drawers, were directed at the corporation. The court concluded that the corporation was merely a custodian of the books and papers in the files and that the attorney retained constructive possession over them. 232 F.2d at 860-61. "Although the relationship of (the attorney) to the Company was not made clear by the court of appeals, the record indicates that the Company was simply the custodian of the records for storage purposes and had no knowledge of the contents of the files." In re Horowitz, 482 F.2d at 86 n. 19
 The Supreme Court's reference to Schwimmer in Couch was merely by way of illustration since the attorney did not claim his Fifth Amendment privilege, instead he had asserted the subpoenas to be unreasonable under the Fourth Amendment and a violation of the attorney-client privilege. When the attorney later sought to raise a Fifth Amendment claim, the court held that it had been waived. Schwimmer v. United States, 232 F.2d 866 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).
 In Guterma, a defendant appealed an order denying his motion to quash a subpoena duces tecum directed at a corporation of which he was chairman of the board. The defendant had stored his personal records in a locked safe within the offices of the subpoenaed corporation. Only he and an indicted co-defendant knew the combination of the safe, and the corporation had no access to the contents. The court, concluding that the defendant remained in constructive possession of the records, emphasized that even if the corporation complied with the subpoena-the most it could do would be to deliver the safe to the courtroom-the defendant would still be compelled to deliver up his own personal papers since only he and his co-defendant knew the combination. 272 F.2d at 346; see also In re Grand Jury Proceedings, 520 F.2d 904 (8th Cir. 1975), cert. denied, 423 U.S. 1050 (1976).
 
 
 [9]
 Jones testified he told Agent Williams that he realized the Hortons' records were not "formal, good and adequate records in the accounting sense of the word." The inference is that Jones did examine the Hortons' records at least to a sufficient extent to allow him to discuss their inadequacy
 
 
 [10]
 Whether or not Jones actually examined the records or processed them into some type of work product is unimportant. What is important is that Jones was intended to have, and had, the right to examine and use the records in settling the Hortons' tax problems. He had complete access and control over the records. This fact is absent from Schwimmer and Guterma, the cases cited by the Supreme Court as examples of constructive possession
 
 
 [11]
 See footnote 3, supra
 
 
 [12]
 The court noted that the established IRS procedure requires that "when, during his investigation, a Revenue Agent discovers an indication of fraud, he ... cease his examination and refer the case to the Intelligence Division (now known as the 'Criminal Investigation Division')." 542 F.2d at 40
 
 
 [13]
 "Since the record leaves no disputed issue of fact with respect to this question, we find it proper to decide it here without reference to a trier of fact." Commissioner of Internal Revenue v. Gordon, 391 U.S. 83, 95 n. 8, 88 S.Ct. 1517, 20 L.Ed. 448 (1968). See King v. Commissioner of Internal Revenue, 458 F.2d 245, 249 (6th Cir. 1972); Texas Co. v. R. O'Brien & Co., 242 F.2d 526, 529 (1st Cir. 1957); Sibicca-Del Mac, Inc. v. Milius Shoe Co., 145 F.2d 389, 400 (8th Cir. 1944); Aetna Life Ins. Co. v. Meyn, 134 F.2d 246, 249 (8th Cir. 1943)