**In re GRAND JURY INVESTIGATION U.S. ATTORNEY MATTER NUMBER 89–4–8881–J.**

**Appeal of Steven R. HELLER.**

**Nos. 90–3930, 90–4020.**

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1991.

Samuel S. Jacobson, Albert Datz, Datz, Jacobson & Lembcke, P.A., Jacksonville, Fla., for appellant.

Robert Genzman, Kathy O'Malley, Asst. U.S. Atty., U.S. Attorney's Office, Jacksonville, Fla., for appellee.

Before JOHNSON, HATCHETT, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

These consolidated appeals involve the propriety of a district court order directing appellant Steven R. Heller ("Heller"), a Jacksonville, Florida attorney, and Heller's legal secretary, Jamie Brown Sausedo ("Sausedo"), to comply with certain Grand Jury subpoenae duces tecum. No. 90–3930 is a challenge to the district court's September 24, 1990 order upholding the subpoenae directing Heller to produce certain trust account records and directing Sausedo to produce certain law practice records as a proper "substitute custodian," but quashing the subpoena directing Heller to produce such law practice records. No. 90–4020 is Heller's appeal from the district court's November 6, 1990 civil contempt order entered after Heller refused to comply or permit Sausedo to comply with the September 24 order.

I. STATEMENT OF THE CASE

Heller is a member of the Florida Bar engaged in the practice of law in Jacksonville, Florida. Heller operates his law practice as a sole proprietorship in which Sause-

do is employed as Heller's secretary. Sometime in 1989, while investigating the financial affairs of one of Heller's clients (the subject of a state cocaine trafficking prosecution), the Internal Revenue Service ("IRS") discovered numerous financial transactions for which Heller had been the closing attorney. Many of these transactions involved loans in nominee names. Suspecting that Heller was involved in a money laundering scheme and had omitted income from his tax returns, the IRS widened its investigation to include Heller. IRS agents interviewed Heller, and although he declined to discuss his income tax returns, Heller acknowledged that he had been closing attorney for the suspect financial transactions and that he had used cocaine in previous years.

During the interview, Sausedo was called on to retrieve or provide some financial records and information. The agents also noted that Sausedo had provided Heller's accountant with information regarding Heller's finances from time to time. Both Heller's personal and business finances are handled through his law office and Sausedo. According to Sausedo's Grand Jury testimony, her duties as secretary include a wide range of administrative and record-keeping duties. Sausedo maintains Heller's legal and financial records, including both business and personal finances, in various ledgers and files. In fact, although Heller directs Sausedo in the handling of his affairs, Sausedo exercises considerable control over the files, records, and ledgers that were subpoenaed by the government.

Two subpoenae were subsequently issued calling for Heller[1] to appear before the Grand Jury and to produce certain documents. The first subpoena (the "trust account subpoena"), called for production of:

1. All law practice trust account records of Steven R. Heller from January 1, 1983 through December 31, 1989, to include but not limited to the following type documents:

A. Financial Institution documents such as statements, cancelled checks, deposit slips, withdrawal slips, check registers and/or check stubs and copies of items deposited.

B. Trust account ledgers.

C. Income ledgers or journals.

D. Expense ledgers or journals.

E. General ledgers or journals.

F. Client ledgers.

G. Invoices to clients.

H. Account Receivable ledgers.

I. Account Payable ledgers.

The district court upheld this trust account subpoena on the ground, *inter alia*, that Rule 5-1.2(b) of the Rules Regulating the Florida Bar ("Florida Bar Rule 5-1.2(b)") required Heller to maintain all of the requested records.

The second subpoena (the "law practice records subpoena") called for the production of:

1. All law practice records of Steven R. Heller from January 1, 1983 through December 31, 1989, to include but not be limited to the following type documents, except those trust account documents which are requested by separate subpoena:

A. Financial institution documents, through which law firm business is transacted, such as statements, cancelled checks, deposit slips, withdrawal slips, check registers and/or check stubs and copies of items deposited.

B. General ledgers.

C. Account receivable ledgers.

D. Account payable ledgers.

E. Cash disbursement journal.

F. Cash receipt journals.

G. General journals.

---

1. Identical subpoenae were originally issued to Sausedo. After the district court's September 24, 1990 order, the original subpoenae were re-issued to Heller directing Heller to appear with the records before the Grand Jury on November 6, 1990. The parties agreed not to re-issue subpoenae to Sausedo because Heller would simply deny her permission to remove the records from his premises. At the November 6 contempt hearing, the parties agreed that the government need not re-issue the subpoenae to Sausedo in order to preserve its records custodian claim as to her.

H. Invoices to clients and/or statements.

I. Payroll records.

J. Appointment books.

2. All client files of loan closings, mortgages, notes and/or promissory notes wherein the lender is an individual rather than a corporation from January 1, 1983 through December 31, 1989.

3. All client files from January 1, 1983 through December 31, 1989 for [61 named individuals, including Leo Lourcy, his wife, and members of their families.]

In response to Heller's argument that the law practice records subpoena was overbroad and oppressive, the district court construed paragraph 1 of the subpoena to compel production only of those records falling within categories A through J. Apparently satisfied with that ruling, the parties do not contest this issue on appeal.[2]

Although the district court held that the *contents* of the documents described in the law practice records subpoena were not privileged because they were voluntarily created business records, the district court ruled the *act of producing* the documents was within the Fifth Amendment privilege. The district court therefore quashed the law practice records subpoena with regard to Heller.[3] The identical subpoena issued to Sausedo, however, was upheld on the ground that Sausedo was a proper "substitute custodian" such that production of the documents by her would not be tantamount to compelling Heller to produce the documents.

 Pending this appeal, the district court agreed to postpone actual confinement of Heller. The district court also followed the parties' suggestion that Heller's attorney, Mr. Albert J. Datz, could serve as interim custodian of the records pending this appeal.[4]

## II. DISCUSSION

In its September 24, 1990 order, the district court ruled that the trust account subpoena was valid as to Heller because all of the material sought was required by Florida Bar Rule 5–1.2(b). At that time, Heller argued that the records falling outside of the scope of Rule 5–1.2(b) were potentially privileged. The district court, however, ordered production of all documents called for by the trust account subpoena, finding that the scope of Rule 5–1.2(b) encompassed all of the requested documents. Subsequent to the September 24, 1990 order, Heller asserted that certain documents called for by the trust account subpoena concerned his personal finances and were therefore privileged. Heller also stated this objection at the November 6, 1990 contempt hearing. R4–5. Heller made no document-by-document assertion of privilege, perhaps relying on a stipulation entered into by Heller and the government.[5] Hel-

---

2. Heller also does not challenge the district court's finding that the documents requested by the law practice records subpoena were not within the attorney-client privilege or were within the crime-fraud exception to attorney-client privilege.

3. The government does not appeal from this holding.

4. We have jurisdiction to hear Heller's appeal. Although there is generally no appellate jurisdiction to review a district court ruling ordering production of documents, jurisdiction is proper after entry of a contempt order. *See generally United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971); *In re Grand Jury Subpoena Served upon Niren*, 784 F.2d 939, 941 (9th Cir.1986) (citing *Ryan*) ("Ordinarily, appellate jurisdiction to review the denial of a motion to quash a grand jury subpoena does not lie *unless and until the witness has been held in contempt.*") (emphasis added).

Furthermore, the fact the district court postponed execution of the confinement portion of its contempt order does not remove jurisdiction in this court. 28 U.S.C. § 1826(b), the statute which provides for expedited appeals from contempt orders aimed at recalcitrant witnesses such as Heller, also provides that release pending appeal is proper unless "it appears that the appeal is frivolous or taken for delay."

5. The stipulation reads:

The United States and Steven R. Heller stipulate that Heller need not produce each document described in the two subpoenas *duces tecum* (returnable November 6, 1991) for the purpose of having a document by document determination of his claim that the document production may be refused pursuant to his rights under the Fifth Amendment to the United States Constitution. However, the United States does not agree that the Fifth Amendment affords Heller any such right.

ler also argues that Sausedo did not have sufficient control of the documents described in the law practice records subpoena to support the district court's finding that Sausedo was a substitute custodian for such documents.

■ The government urges that Heller has forfeited his Fifth Amendment privilege as to any documents that are personal in nature because he has commingled his personal and law practice trust account records. The government points out that such commingling is in violation of Florida Bar Rules that require trust accounts to be kept separate from other accounts.[6] The government also argues that the district court's ruling—that production of the law practice records by Sausedo as substitute custodian would not violate Heller's Fifth Amendment rights—should be extended to the trust account records as well. Because we agree with this last argument, we need not address Heller's claims of privilege.[7]

In *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973) (emphasis in original), the Supreme Court stated that "the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him." Employing this rationale, the *Couch* Court held that the financial records of a sole proprietress in the possession of her accountant were not priv-

ileged. Similarly, in *Fisher v. United States*, 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n. 7, 95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141 (1975)), the Court declared:

> We cannot cut the Fifth Amendment completely loose from the moorings of its language, and make it serve as a general protector of privacy—a word not mentioned in its text and a concept directly addressed by the Fourth Amendment. We adhere to the view that the Fifth Amendment protects against "compelled self-incrimination, not [the disclosure of] private information."

*See also In re Grand Jury Subpoena Duces Tecum dated May 29, 1987*, 834 F.2d 1128, 1131 (2d Cir.1987) ("[M]aterial owned by one person may, at least under some circumstances, be subpoenaed from a third party non-owner in possession without impinging on the Fifth Amendment rights of the owner.") *See generally* 1 W. LaFave & J. Israel, *Criminal Procedure* § 8.12(d), at 696–97 (1984). Our predecessor circuit has applied this rationale to enforce a subpoena calling for production of tax records in the hands of an accountant. *See, e.g., United States v. Jones*, 630 F.2d 1073 (5th Cir.1980).[8]

Of course, "situations may well arise where constructive possession is so clear or

R1–28.

**6.** The government also argues, somewhat obliquely, that *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) "at least tacitly recognizes that even personal records and notations are not immune from scrutiny, or production." Brief of Appellee at 13–14. We recognize that *Andresen* and later cases represent a shift in Fifth Amendment jurisprudence from the privacy based rationale of *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), to the idea that records "voluntarily committed ... to writing," *Andresen* 427 U.S. at 473, 96 S.Ct. at 2745, are not compelled testimony. However, although a few circuits have held that even personal papers are subject to this new rationale, *see, e.g., In re Sealed Case*, 877 F.2d 83, 84 (D.C.Cir.1989) (Fifth Amendment privilege not applicable to the contents of any voluntarily prepared records, including personal ones), *cert. denied sub. nom., Roe v. United States*, — U.S. —, 110 S.Ct. 839, 107 L.Ed.2d 834 (1990); *In re*

*Grand Jury Proceedings on February 4, 1982*, 759 F.2d 1418 (9th Cir.1985) (same), this circuit has not yet addressed the remaining vitality of *Boyd* with regard to personal documents. The Supreme Court's own reluctance to overrule *Boyd, see In re Grand Jury Subpoena Duces Tecum, May 9, 1990*, 741 F.Supp. 1059, 1068 (S.D.N.Y. 1990), and the government's failure to press this point here counsel in favor of continuing to leave this question open in this circuit.

**7.** Because we are upholding the trust account subpoena on the ground that Sausedo is a valid substitute custodian for the trust account records, we express no opinion with regard to the district court's ruling concerning the impact of the Florida bar rules or the "required records doctrine" on Heller's assertion of Fifth Amendment privilege.

**8.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

the relinquishment of possession so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." *Couch*, 409 U.S. at 333, 93 S.Ct. at 618. However, these situations are rare. "Constructive possession of personal records for purposes of asserting the privilege against self-incrimination exists only where 'the [person asserting the privilege] has placed papers in the hands of another person or entity for custodial safekeeping, thereby, retaining the right to immediate possession though not having actual possession.'" *Jones*, 630 F.2d at 1079 (quoting *United States v. White*, 477 F.2d 757, 763 (5th Cir.1973), *aff'd on rehearing en banc*, 487 F.2d 1335 (5th Cir.), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974)). In fact, the *Jones* court suggested that a person asserting the privilege could successfully retain constructive possession only where the documents were left in the hands of mere "custodial bailees or 'naked possessors,' who had no knowledge of the contents of the records in their custody and were not to use them for any purpose." *Id.* (distinguishing *Schwimmer v. United States*, 232 F.2d 855 (8th Cir.), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), and *United States v. Guterma*, 272 F.2d 344 (2d Cir.1959)).[9]

In *In re Grand Jury Subpoena Duces Tecum dated May 29, 1987*, 834 F.2d 1128, 1132 (2d Cir.1987), the court found "only one case that has relied on *Couch* to allow an owner of documents to invoke Fifth Amendment rights to quash a subpoena directed to a third party." The case found by the Second Circuit, *In re Grand Jury Subpoena (Kent)*, 646 F.2d 963 (5th Cir. Unit B June 1, 1981), happens to be binding precedent in this circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981). In *Kent*, the government had tried to obtain subpoenaed documents held by the court to be privileged in the hands of Kent by the alternative means of subpoenae directed at the comptroller of the sole proprietorship owned by Kent. The court refused to find that the comptroller

was a substitute custodian, concluding that Kent "never relinquished control of the records," but rather, allowed others only "mere access ... to enable his employees to perform their functions." *Kent*, 646 F.2d at 969. In *Kent*, the comptroller had no role in the preparation, filing or maintenance of any of the subpoenaed documents. *Id.*, 646 F.2d at 966.

At the other extreme from *Kent* are cases where the potential substitute custodian exercises almost exclusive control over subpoenaed documents with very little input from their owner. For example, in *Matter of Grand Jury Empanelled (Colucci)*, 597 F.2d 851 (3d Cir.1979), the court sustained a subpoena calling for the owner's recordkeeper to produce certain documents. The court observed that the owner was seldom present at the office and had delegated almost all office management responsibilities to the recordkeeper. *Id.* at 863. *See also Grand Jury Subpoena Duces Tecum dated May 29, 1987*, 834 F.2d 1128 (2d Cir.1987) (subpoena upheld where recordkeeper had virtual exclusive responsibility and the owners "had no more than occasional and casual contact with the materials in question"); *In re Grand Jury Proceedings (Manges)*, 745 F.2d 1250 (9th Cir.1984) (bookkeeper was valid substitute custodian where owner had little involvement with the records and rarely came to the office where the records were kept). The court in *May 29, 1987* also stated that "the proper emphasis should be on the degree of control ceded to the party the subpoena compels to act rather than the degree of control retained by the owner." *Id.*, 834 F.2d at 1333.

Sausedo's role in Heller's office falls somewhere in between the situation in *Kent* and the facts of *Colucci*, *May 29, 1987*, and *Manges*. The district court found the following:

> Sausedo is Heller's legal and personal secretary, his only employee. She has worked for Heller since October, 1984. Government's Exhibit 4 ("Ex.4"), Tran-

---

9. We need not go as far as this suggestion from *Jones* in the instant case because, as the discussion below will reveal, Sausedo exercised sub-

stantially more control over the documents at issue than the purported substitute custodians in *Schwimmer* and *Guterma*.

script of Sausedo's grand jury testimony of April 4, 1990, [R1–18–19]. Sausedo maintains Heller's client and personal financial records, Ex.4 at [R1–18–20, 22–26]. Sausedo types all Heller's papers, keeps his court calendar, pays his business and personal bills. Ex.4 at [R1–18–20]. She writes business and personal checks for his signature and receives business and personal payments on his behalf. Ex.4 at [R1–18–21 to 23]. She maintains records of deposits and prepares deposit slips for Heller. Ex.4 at [R1–18–26].

Sausedo handles Heller's bookkeeping and keeps financial ledgers at her desk. Ex.4 at [R1–18–20, 24]. She also works with Heller's client files, where Heller keeps financial information regarding clients, as part of her duties as his secretary. She prepares client bills, which are placed in client files. Ex.4 at [R1–18–25]. Sausedo thus has intimate knowledge of the contents of Heller's law practice records. In fact, IRS Special Agent Wendell Welman testified that during a February, 1990 interview, when Heller could not answer their questions about the manner by which he kept his records, he would call on Sausedo to answer the question. [R2–7 to 8]. Heller also relied on Sausedo to provide financial information to, and to work with, his accountant. Ex.4 at [R1–18–27 to 28; R2–8 to 9]. R1–20–16 to 17.[10]

The above factual findings show that Sausedo exercised considerably more control over the subpoenaed documents than did the comptroller in *Kent*.[11] Sausedo was intimately involved in the preparation and maintenance of the records, sometimes to the point where she was able to supply information that Heller could not. We agree with the district court that "[t]hough Heller is actively involved with his law practice [and trust account] records and exercises a degree of control over them, Sausedo exercises more than fleeting possession and enjoys considerably more than access to [the] subpoenaed ... records." R1–20–16. Production of the documents by Sausedo does not have the degree of personal compulsion sufficient to constitute an infringement on Heller's Fifth Amendment privilege. Therefore, we hold that Sausedo is a valid substitute custodian with respect to both the law practice *and* the trust account records. The district court shall direct the interim custodian, Albert J. Datz, to deliver all of the subpoenaed records to Sausedo so that she can produce them for the Grand Jury.

AFFIRMED.[12]

---

**10.** With regard to the trust account records, because the district court upheld the trust account subpoena as to Heller on other grounds, it did not specifically make its findings regarding Sausedo's control over Heller's records applicable to those records as well as to the law practice records. However, it is clear from the record that Sausedo's role with regard to the trust account records was no less than for the law practice records. *See, e.g.*, Ex.4 at R1–18–20. In fact, a simple comparison between the documents requested by the trust account subpoena set out above and Sausedo's duties with respect to such documents, as described in her Grand Jury testimony, confirms that this is the case. Therefore, regardless of whether any of the requested documents are privileged in the hands of Heller, Sausedo's ability to produce all of the documents described by the subpoenae obviates the need for a document-by-document review or any discussion of whether the contents or act of producing the subpoenaed documents are privileged.

**11.** Because the facts of this case are distinguished from *Kent* in that Sausedo exercised greater control over the subpoenaed documents than did the comptroller in *Kent*, we need not address any conflict between *Kent*'s more restrictive interpretation of the scope of the substitute custodian concept, and the possibly broader interpretation of that concept in *Jones*.

**12.** We express no view with regard to any of the district court's legal determinations other than its conclusion that Sausedo is a valid substitute custodian for the law practice records, which we have extended to the trust account records as well.