## In re GRAND JURY SUBPOENA (MALTBY).

### UNITED STATES of America, Plaintiff-Appellant,

v.

### John B. LACOSTE, Intervenor-Appellee.

### No. 85–1168.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1986.

Decided Sept. 29, 1986.

---

John Penrose, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Doron Weinberg, San Francisco, Cal., for intervenor-appellee.

Before SNEED, ANDERSON, and POOLE, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The United States (government) appeals from a district court order quashing part of a grand jury subpoena. At issue is whether certain records belonging to intervenor John B. Lacoste (Lacoste) are protected by the Fifth Amendment privilege against compelled incrimination or by the attorney-client privilege.

## I. BACKGROUND

Lacoste was the Chief of Police in Emeryville, California. On the evening of November 15, 1983, the Emeryville City Council suspended Lacoste from this position. Lacoste went to police headquarters and began removing boxes and papers. Although Lacoste claimed he was removing only personal records, Police Department officials were concerned about the possible removal of department property. In response to this situation, representatives of the Alameda County District Attorney's office were summoned. A sorting process was begun and continued throughout the night and early morning hours, through which the ownership of each document could be verified by the District Attorney representatives. Lacoste was allowed to remove those items determined to be his personal property. The procedure was tedious and shortly after 7:00 a.m. on November 16, the parties agreed to temporarily suspend the sorting due to fatigue. The remaining unsorted materials were placed under seal at police headquarters.

Before the sorting process could be resumed, a federal grand jury that had been investigating matters involving Lacoste issued and served a subpoena on the new Acting Chief of Police, one Maltby. The subpoena called for production of all documents on Police Department premises relating to various aspects of the investigation. Lacoste filed a motion to intervene and to quash the subpoena. The district court ordered that the unsorted materials continue to be impounded, and appointed a special master to determine the ownership of each document, whether each was subpoena responsive, and whether each was privileged.

The master returned a large number of items belonging to the Police Department and a large number of nonresponsive items belonging to Lacoste. Then, the master, Lacoste, and his counsel reviewed the remaining subpoena-responsive material for possible objections. No objection was asserted as to some documents, and they are not at issue here. As to all the remaining items, Lacoste claimed the Fifth Amendment privilege against self-incrimination. Further, as to a few of the items, Lacoste invoked the attorney-client privilege.

The master ruled that because the documents were of a "personal" nature, the contents of those documents were privileged by the Fifth Amendment according to the rule in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The master also held that Lacoste was personally compelled by the subpoena, despite the

fact that it was directed at Acting Chief Maltby. Finally, the master upheld Lacoste's attorney-client privilege claim as to five specific documents.[1]

The district court agreed with the master and affirmed the findings that the document contents were privileged and that Lacoste was personally compelled by the subpoena. Because these findings encompassed all the challenged documents, however, the district court expressly declined to decide the attorney-client privilege issue. The district court, therefore, quashed part of the subpoena, and ordered the documents released to Lacoste.[2] The government appeals to this court.

## II. DISCUSSION

The government argues that the Fifth Amendment does not privilege the subpoena-responsive documents because the subpoena is directed to Acting Chief Maltby and, therefore, it does not compel any act of production from Lacoste. The district court acknowledged that Lacoste was not in actual physical possession of the documents. Nevertheless, the court found that Lacoste was in *constructive* possession because his "involuntary relinquishment of actual possession was so insignificant as to leave the personal compulsion on him essentially unaltered." (ER at 89). Thus, the court found that Lacoste was subject to actual compulsion because he was compelled to stop removing the records from the police department "as he was doing and as, except for the subpoena, he had the right to do." (ER at 82). We agree with the government and reverse the district court.

In addressing this issue, the Supreme Court has clearly stated that "a person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth Amendment." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742–43, 104 S.Ct. 2720, 2725–26, 81 L.Ed.2d 615, 621–22 (1984). The rationale behind this principle was elucidated in the seminal *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), and in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The facts in *Couch* and *Fisher* were similar: subpoenas seeking taxpayers' records were directed at the taxpayers' accountant and attorney, respectively, in whose possession the records were kept. In holding that the taxpayers could not use the Fifth Amendment to protect the records, the Court emphasized that the privilege is *personal* to the accused and the taxpayers were not personally compelled by the subpoenas to do anything. Since the records were sought from the third-party accountant and the third-party attorney, "the ingredient of personal compulsion against an accused is lacking." *Couch*, 409 U.S. at 329, 93 S.Ct. at 616, 334 L.Ed.2d at 554; *Fisher*, 425 U.S. at 397, 96 S.Ct. at 1574, 48 L.Ed.2d at 48.

The same ingredient is lacking at bar. The subpoena directed at Maltby does not compel anything from Lacoste personally. The sought-after records are in the custody and possession of the Emeryville Police Department, and only that department can comply with the subpoena. That being the case, Lacoste is not compelled to bear witness against himself. It makes no difference that Lacoste does not want the Police Department to possess the records. Likewise, it is irrelevant that Lacoste does not want the records produced. "'A party is privileged from producing the evidence but not from its production.'" *Couch*, 409 U.S. at 328, 93 S.Ct. at 616, 34 L.Ed.2d at

---

**1.** The master listed the following as confidential communications between Lacoste and an attorney concerning legal advice:

(1) Letter from Carniato's office to Lacoste, November 15, 1982, re litigation.
(2) Letter from Carniato's office to Lacoste, December 27, 1982, re litigation.
(3) Copies of unsigned, unfiled drafts of court documents in litigation.

(4) Letter to Lacoste from attorney Heafey.
(5) Undated note to "Billy."
(ER at 84).

**2.** The district court stayed its order for release pending appeal. All subpoena-responsive documents remain impounded.

554, and *Fisher*, 425 U.S. at 399, 96 S.Ct. at 1575; 48 L.Ed.2d at 49 (quoting *Johnson v. United States*, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913)).

We reject Lacoste's argument, and the district court's reasoning, that the instant facts give rise to the exception contemplated in *Couch* and *Fisher*. There the Court noted that "situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." *Couch*, 409 U.S. at 333, 93 S.Ct. at 618, 34 L.Ed.2d at 557 (footnote omitted); *Fisher*, 425 U.S. at 398, 96 S.Ct. at 1574, 48 L.Ed.2d at 48. The Court has provided no further guidance as to what circumstances would trigger this reserved exception. We are convinced, however, that they are not presented at bar.

This is not a case where, as in *Schwimmer v. United States*, 232 F.2d 855 (8th Cir.), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), and *United States v. Guterma*, 272 F.2d 344 (2d Cir.1959), the accused maintained control of the documents while merely storing them on the premises of a third party. Nor is this a case, as suggested by Lacoste, concerning the sanctity of private, personal office space. The records being sought are not secured in Lacoste's former personal office.[3]

It may seem mere happenstance that this question arises at all. Had the parties not grown weary on the morning of November 16, 1983, the sorting process may have been completed before the subpoena issued. In that event, nothing would remain for Maltby to produce and, more importantly, Lacoste could properly assert the privilege as to any subpoena directed at him personally. Unfortunately for Lacoste,

however, those events did not occur, and like the petitioners in *Couch* and *Fisher* whose records happened to be in the possession of a subpoenaed third party, Lacoste is not personally compelled and the Fifth Amendment provides him with no protection.

Consequently, we reverse the district court's application of the Fifth Amendment without reaching the issue of whether the contents of the "personal" documents were privileged.[4] It is still possible that a limited number of the documents may be protected under the attorney client-privilege. Because the district court expressly refused to review the master's findings on the attorney-client privilege, however, we must remand for that purpose.

Accordingly, the order of the district court is VACATED IN PART and this case is REMANDED for further proceedings.

POOLE, Circuit Judge, dissenting:

Lacoste was the Chief of Police in Emeryville, California, until November 15, 1983, when the city council suspended him. Shortly after being suspended, Lacoste went to his office at police headquarters and began removing what he claimed were his personal records. Acknowledging that Lacoste was entitled to this property, a representative of the Alameda County District Attorney's office nevertheless supervised the sorting process, but only to insure that no department property was removed by Lacoste. The process turned out to be quite lengthy and cumbersome so that about 7:00 a.m. in the morning, the parties, many of whom had been up all night, agreed to take a break. During this break the federal prosecutor heard about the situation and that afternoon, before the sorting could be resumed, a grand jury subpoena was served on the new Acting

---

**3.** By this we do not hold or imply that the private, personal office situation or the facts in *Schwimmer* or *Guterma* are sufficient to invoke the exception envisioned in *Couch*. We need not decide those issues today. We merely note that they are distinguishable from the circumstances at bar.

**4.** Although we do not reach the *Boyd* issue, for edification purposes we direct the interested reader to *In re Grand Jury Proceedings (Terry)*, 759 F.2d 1418 (9th Cir.1985), which was filed after the judgment of the district court in this case.

Chief of Police, compelling the production of various documents thought to be located in Lacoste's old office. Lacoste correctly filed a motion to intervene and to quash the subpoena, claiming that certain documents were not subject to production.

In an effort to enforce the subpoena yet protect the rights of Lacoste, the district court ordered the documents impounded and appointed a special master to complete the task that the parties had already begun. As to certain subpoena-responsive documents, Lacoste had no objection to their production. As to others, however, he invoked the Fifth Amendment privilege against self-incrimination.[1] Thereafter, the magistrate ordered some of the property to be turned over to apparent owners. She then ruled that the contents of all of Lacoste's "personal records," including "personal financial" records were privileged under the Fifth Amendment. The district court agreed with Lacoste that the latter documents were privileged and that Lacoste had been in constructive possession of them when the subpoena was issued. The majority's conclusion that the documents were in the possession of the Chief of Police, that is the Emeryville Police Department, and thus that Lacoste could not intervene to quash the subpoena, ignores the undisputed factual context in which the documents came to be where they were. Because I agree with the district court that the police department acquired only bare custody, (much as one's landlord may have custody of a tenant's or visitor's property), that Lacoste was in constructive possession of the papers in his office, and never surrendered that possession, and thus the documents at issue are privileged from production under the Fifth Amendment, I dissent.

## I.

In *Couch v. United States*, 409 U.S. 322, 333, 93 S.Ct. 611, 618, 34 L.Ed.2d 548 (1973), the Court held that it is possession, not ownership, that bears the most significant relationship to the Fifth Amendment protections against governmental compulsions. From this basic holding, courts have derived the general rule that a person inculpated by materials sought by a subpoena issued to a third party in possession cannot invoke the Self-Incrimination Clause of the Fifth Amendment to prevent production of those materials. This rule, however, is not to be applied blindly. As the Supreme Court cautioned, "[w]e do indeed attach constitutional importance to possession, but only because of its close relationship to those personal compulsions and intrusions which the Fifth Amendment forbids. Yet, * * * we do *not* adopt any *per se* rule." *Id.* at 336 n. 20, 93 S.Ct. at 620 n. 20 (emphasis added).

Two important exceptions from the general rule are those situations "where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." *Id.* at 333, 93 S.Ct. at 618. The facts of this case present just such a situation.

These documents were all stored in Lacoste's former personal office. Upon finding out that he was being suspended from his position as Chief of Police, Lacoste went to his office and began removing his personal belongings. His actions unequivocally demonstrated his intent to exercise dominion and control over his personal records. He was prevented from completing his task only by the intervention of the District Attorney's office which only wanted to make sure that the things he took were indeed his own. The Emeryville Police Department and the District Attorney's office never disputed that Lacoste was entitled to remove his personal records.

Nevertheless, the majority dismisses Lacoste's claim to constructive possession of these materials on the reasoning that Lacoste no longer had control of the documents when he and the police personnel took a break and left the records under guard, which was the situation at the time the subpoena was served. Apparently, the

1. As to a few of the documents, Lacoste also invoked the attorney-client privilege.

majority is focusing on the fact that Lacoste agreed to temporary halting of the sorting process and and agreed to placing the unsorted materials under seal until the participants could resume the process later on. Far from weakening Lacoste's claim to constructive possession, this agreement strengthens it.

Constructive possession of personal records, for purposes of asserting a Fifth Amendment privilege, exists when the person asserting the privilege " 'has placed papers in the hands of another person or entity for custodial safekeeping, thereby, retaining the right to immediate possession though not having actual possession.' " *United States v. Jones,* 630 F.2d 1073, 1079 (5th Cir.1980) (quoting *United States v. White,* 477 F.2d 757, 763 (5th Cir.1973), *aff'd on rehearing en banc,* 487 F.2d 1335, *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974)). Clearly, Lacoste was exercising control and possession of his personal records during the sorting process. When this process was suspended, the materials were placed under seal for the limited purpose of maintaining the status quo and protecting any claims of right by either side until the parties could resume sorting. Consequently, Lacoste never abandoned his right to immediate possession of his personal records. Because constructive possession is so clear, Lacoste is entitled to assert whatever protections the Fifth Amendment afforded him as to his documents just as much as if he had them in his pocket.

## II.

The documents we are considering are Lacoste's personal non-business records. The Supreme Court has held that the contents of personal business records are not privileged under the Fifth Amendment where the preparation of such records is voluntary. *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 1241–42, 79 L.Ed.2d 552 (1984). The government argues that the reasoning of *Doe* applies equally to personal non-business records. I disagree.

In *Doe,* the Supreme Court stated that the issue before it was "whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the *business* records of a sole proprietorship." 104 S.Ct. at 1239 (emphasis added). Thus, the Court limited the breadth of its inquiry to the protections afforded the contents of an individual's business records which pertain to a business entity the individual is carrying on. Nevertheless, one justice apparently viewed the Court's holding as having a much broader reach. Justice O'Connor wrote a separate concurrence "just to make explicit what is implicit in the analysis of [the Court's] opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind." *Id.* at 1245 (O'Connor, J., concurring). This gratuitous commentary, heaving overboard profound and historically settled concepts, is not at all the law of the case in *Doe.* At least two other justices, however, disagreed with such an interpretation. In a separate partial concurrence/partial dissent joined in by Justice Brennan, Justice Marshall remarked:

> Contrary to what Justice O'Connor contends, * * * I do not view the Court's opinion in this case as having reconsidered whether the Fifth Amendment provides protection for the contents of "private papers of any kind." This case presented nothing remotely close to the question that Justice O'Connor eagerly poses and answers.

*Id.* at 1245 (Marshall, J., concurring in part and dissenting in part). Accordingly, I believe that the holding in *Doe* is limited to the business records context presented in that case and does not preclude Lacoste from claiming a Fifth Amendment privilege in his personal non-business records.

Even assuming that the contents of these documents were not privileged, the Court has steadfastly held that "the act of producing the document may be." *Id.* at 1242. The Fifth Amendment privilege against self-incrimination protects a person "against forced production of personal papers and effects, at least to the extent that

the act of producing the documents might serve as a basis for incriminating inferences." *In re Grand Jury Proceedings*, 633 F.2d 754, 756 (9th Cir.1980); *see Baker v. Limber*, 647 F.2d 912, 917 n. 5 (9th Cir. 1981).

The district court specifically found that the documents at issue are privileged because as to these documents the act of production is testimonial self-incrimination. The court's finding rests on its determination of uniquely factual issues. *Doe*, 104 S.Ct. at 1243; *In re Grand Jury Proceedings on February 4, 1982*, 759 F.2d 1418, 1421 (9th Cir.1985). Because I believe that the record supports the district court's conclusion, I would affirm the judgment.