**In re GRAND JURY SUBPOENA DUCES TECUM DATED MAY 29, 1987.**

**John DOE and Jane Doe, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 354, Docket 87–6193.**

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1987.

Decided Oct. 2, 1987.

Opinion Dec. 1, 1987.

Stephen E. Kaufman, New York City (Dominic F. Amorosa, Roanne L. Mann, New York City, of counsel), for appellants.

James R. DeVita, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Aaron R. Marcu, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

John and Jane Doe appeal from a decision of the United States District Court for the Southern District of New York, Broderick, J., allowing them to intervene but denying their motion to quash a subpoena *duces tecum* directed to their administrative assistant Richard Roe. Doe and Roe are pseudonyms used to preserve the ano-nymity of the principals involved and the secrecy of the underlying grand jury proceedings. The district court simultaneously granted the government's motion to compel compliance with the subpoena but stayed that portion of its order pending resolution of this expedited appeal. The Does argue, as they did below, that the subpoena violates their rights under the Fourth and Fifth Amendments. We affirmed the judgment of the district court on October 2, 1987, with a notation that an opinion would follow.

## BACKGROUND

The Does, husband and wife, are respectively presidents of at least two corporations. They carry on their business and personal affairs from a suite of offices where their administrative assistant Roe also works. Although Roe is paid by a Doe-controlled corporation and his duties include corporate matters, he also looks after the Does' personal checking accounts. In connection with the latter he writes checks for the Does' signatures, keeps check registers, reconciles monthly statements, prepares deposits and maintains a separate ledger book for each account. The checkbooks, registers and ledgers are kept in a file cabinet in his office within the Does' suite; cancelled checks and past statements are filed in a credenza in the hallway outside of his office.[1] The Does' own offices are located elsewhere within the suite.

A grand jury is investigating allegations that the Does diverted corporate funds to personal use while falsifying records to conceal the diversion and evade federal taxation. In the course of its investigation the grand jury issued a subpoena *duces tecum* on February 26, 1987, directing Roe to appear and bring any documents relating to such transactions. The subpoena, redacted to eliminate identifiable references to the Does, directed Roe to produce:

---

1. For purposes of this opinion we refer to the location of the documents in the present tense. Counsel for appellants have apparently secured these materials and they are no longer in the office. However, it is conceded on all sides that the relevant state of affairs concerning the loca-tion, custody and possession of the documents is that which existed when Roe was served with the subpoena, *see Couch v. United States,* 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 616 n. 9, 34 L.Ed. 548 (1973).

Any documents of any description relating or referring in any way to expenditures by [Doe-controlled corporations], a) for or on behalf of [the Does] personally, or b) for the provision of goods or services for [the Does' home] and its surrounding grounds.

J.App. at 76.

In his first appearance before the grand jury on March 24, 1987, Roe brought no documents but testified about the nature and scope of his work for the Does, including his role with respect to their personal checking accounts. The grand jury issued a second, more detailed subpoena *duces tecum* on May 29, 1987, requesting four specific categories of documents "within [Roe's] custody or control (joint or exclusive)." These were set forth in a rider attached to the May 29 subpoena as follows:

1) Any and all books, records or documents of any kind in your custody or control (joint or exclusive) relating or referring in any way to [a specified checking account], including, but not limited to, monthly statements, cancelled checks, check stubs or check register, deposit tickets, debit memoranda, credit memoranda, reconciliations, ledgers or journals.

2) Any and all books, records or documents of any kind in your custody or control (joint or exclusive) relating or referring in any way to [a second specified checking account], including, but not limited to, monthly statements, cancelled checks, check stubs or check register, deposit tickets, debit memoranda, credit memoranda, reconciliations, ledgers or journals.

3) Any and all books, records or documents of any kind in your custody or control (joint or exclusive) relating or referring in any way to expenditures for construction, renovation, furnishing, goods or services, or operating expenses of any kind at [the Does' home] and the surrounding grounds in [city, state].

4) Any and all books, records or documents of any kind in your custody or control (joint or exclusive) relating or

referring in any way to charge accounts in the name of, or known by you to be utilized by, [one of the Does].

J.App. at 145. Roe again appeared before the grand jury on June 9 and 16, 1987. He testified under immunity, *see* J.App. at 72, but once more brought no documents. When the government went to the district court seeking to compel Roe to comply with the second subpoena, the Does intervened.

The grounds on which the Does resisted the motion to compel are essentially the same as those they urge on appeal. First and principally, they contend that the subpoena circumvents their Fifth Amendment rights because it effectively compels the production of documents within their constructive possession despite its nominal direction to Roe. Second, they argue that the subpoena violates the Fourth Amendment because it requires Roe to conduct a warrantless search of their office suite at the government's instance. We reject both contentions.

### I. *Jurisdiction*

 Because denial of a motion to quash a subpoena *duces tecum* is ordinarily not an appealable final order within the meaning of 28 U.S.C. § 1291 (1982), a brief discussion of our appellate jurisdiction is in order. As a rule, denial of a motion to quash becomes appealable only after the person served with the subpoena refuses to comply and has been held in contempt. *See Cobbledick v. United States*, 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed.2d 783 (1940); *Cogen v. United States*, 278 U.S. 221, 223-24, 49 S.Ct. 118, 119, 73 L.Ed. 275 (1929); *In re Katz*, 623 F.2d 122, 124 (2d Cir.1980). There is an exception to this rule, however: "where the subpoena is directed against a third party [who is unlikely to risk being held in contempt to vindicate someone else's rights], the movant who claims that production of the subpoenaed material would violate his fifth amendment privilege against self-incrimination is permitted an immediate appeal." *Id. See also Perlman v. United States*, 247 U.S. 7, 13, 38 S.Ct. 417, 420, 62 L.Ed. 950 (1918); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 54-55 (2d

Cir.1985). The situation before us falls squarely within this exception. We thus have jurisdiction to consider this appeal.

## II. *The Fifth Amendment Claim*

■ The Fifth Amendment proscribes the compulsion of self-incriminating testimonial communications. *See In re N.D.N. Y. Grand Jury Subpoena # 86-0351-S,* 811 F.2d 114, 116 (2d Cir.1987). All three elements, "compulsion, a testimonial communication and the incriminating nature of that communication" must be present to support a finding that the amendment's proscription has been offended. *See id.; see also In re Grand Jury Subpoena (Two Grand Jury Contemnors),* 826 F.2d 1166, 1168 (2d Cir.1987). The amendment is concerned, however, only with compulsion to give testimony against oneself. *See S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984); *United States v. Doe,* 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1240–41, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 397–98, 96 S.Ct. 1569, 1574–75, 48 L.Ed.2d 39 (1976); *Couch v. United States,* 409 U.S. 322, 327–28, 93 S.Ct. 611, 615–16, 34 L.Ed.2d 548 (1973) ("extortion of information from the accused himself ... offends our sense of justice"). The production of evidence against a person thus may be compelled if that person is not directly subjected to compulsion: " 'A party is privileged from producing the evidence but not from its production.' " *Couch,* 409 U.S. at 328, 93 S.Ct. at 616 (quoting *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913)).

It follows that material owned by one person may, at least under some circumstances, be subpoenaed from a third party non-owner in possession without impinging on the Fifth Amendment rights of the owner. *See, e.g., Fisher,* 425 U.S. at 397, 96 S.Ct. at 1574 (enforcement of subpoena to obtain taxpayer's accountant's work papers from taxpayer's attorney "would not 'compel' the taxpayer to do anything"); *Couch,* 409 U.S. at 329, 93 S.Ct. at 616 (taxpayer's accountant, "not the taxpayer, is the only one compelled to do anything" in response to subpoena ordering accountant to turn over records related to taxpayer); *In re Horowitz,* 482 F.2d 72, 84 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (drawing parallel to *Couch* where subpoena was directed to accountant).

The Does seek to distinguish their case, however, on the theory that the records sought here were in their office suite and therefore in their "constructive possession." They contend that the subpoena thus actually compels them personally despite its nominal direction to their assistant Roe. They rely for this analysis on a statement in *Couch* that, when an owner's documents are subpoenaed in the hands of a third party, "situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions on the accused substantially intact." 409 U.S. at 333, 93 S.Ct. at 618. The precise meaning of this dictum is unclear, however, because the *Couch* Court "neither defined [constructive possession] in a Fifth Amendment context nor decided what the result would be when the definition was met." *Horowitz,* 482 F.2d at 86. We accordingly look to subsequent judicial treatment of the concept to sharpen its contours.

The Supreme Court itself has provided little guidance, defining the idea less in terms of what it is than of what it is not. *Couch* itself mentioned constructive possession only as a distinguishable situation while holding that the transfer of documents to attorneys in that case did *not* qualify. *See* 409 U.S. at 333–34, 93 S.Ct. at 618–19. The Court in *Fisher* similarly held that that case was not one in which a constructive possession analysis was applicable. *See* 425 U.S. at 398, 96 S.Ct. at 1574. *Fisher* actually treats the *Couch* statements about constructive possession as dictum, referring to those situations as ones *Couch* "suggested *might* exist." *Id.* (emphasis added).

Courts have rarely held constructive possession analysis applicable, even in situations where strong arguments could be made that such possession was retained.

For example, the Ninth Circuit rejected the analysis where a suspended police chief sought to resist a subpoena *duces tecum* issued to the acting chief for papers in the custody and possession of the police department. *See In re Grand Jury Subpoena (Maltby)*, 800 F.2d 981 (9th Cir.1986). The former chief had gone to his office to remove personal papers immediately upon learning of his suspension. The state District Attorney's office supervised the sorting out of personal from department papers, a process that continued through the night. The subpoena *duces tecum* was served on the acting chief during a break from the all-night sorting session. *See id.* at 982. The Court of Appeals reversed the district court's finding that the suspended chief remained constructively in possession of the documents within the meaning of the *Couch* dictum, holding that the compulsion of the subpoena only operated against the acting chief and that the suspended chief was thus "not compelled to bear witness against himself." *Id.* at 983. A dissenting judge argued that the suspended chief's retention of constructive possession presented "just [the] situation" contemplated by *Couch,* entitling the suspended chief "to assert whatever protections the Fifth Amendment afforded him as to his documents just as much as if he had them in his pocket." *Id.* at 985–86 (Poole, *J.,* dissenting).

In *In re Grand Jury Empanelled February 14, 1978 (Colucci)*, 597 F.2d 851 (3d Cir.1979), a subpoena for records of a sole proprietorship was served on an office manager responsible for their preparation and custody. *Id.* at 853. The Third Circuit, in reaching its decision, relied on the lack of compulsion on the proprietor. *Id.* at 860–61. The court went on to reject the *Couch* constructive possession analysis on the facts of the case: "an employer's rights under the Fifth Amendment are not compromised by a subpoena *duces tecum* served on [an] employee to whom he has delegated exclusive responsibility for preparation and custody of business records." *Id.* at 863.

In *Horowitz,* we declined to use the *Couch* exception to shield personal tax records in the actual possession of an accountant who had complete access to them. 482 F.2d at 86. We expressly noted that our holding was supported by *Couch* although *Horowitz* was "indeed closer than *Couch* " because the taxpayer rented a separate office specifically to maintain the privacy of the records. *Id.* at 83.

We are aware of only one case that has relied on *Couch* to allow an owner of documents to invoke Fifth Amendment rights to quash a subpoena directed to a third party. In *In re Grand Jury Subpoena (Kent)*, 646 F.2d 963 (5th Cir. Unit B June 1981), a subpoena was served on the comptroller of a sole proprietorship. *Id.* at 964–65. The Fifth Circuit held the *Couch* exception applicable because the sole proprietor "never relinquished control of the records[,]" allowing the comptroller "mere access" and only to the "extent necessary to enable his employees to perform their functions." *Id.* at 969. The court observed that the facts before it were "significantly different" from *Fisher* and *Colucci, id.* at 970, specifically noting that

> [the owner] *never* delivered possession, custody, *or* control of his records to [the comptroller] or anyone else. [The comptroller] was *never* delegated the exclusive responsibility for preparation and custody of the subpoenaed records.

*Id.* (emphasis added). Under the circumstances, the court held that to honor the subpoena on the comptroller would effectively compel the proprietor. *Id.* at 969.

■ The interpretation of "constructive possession" implicit in these cases squares with Judge Friendly's observation that "it seems highly unlikely that [the *Couch* Court] was viewing the term as broadly as courts have done in other contexts." *Horowitz*, 482 F.2d at 86. Accordingly, we reject out of hand appellants' implication that for Fifth Amendment purposes they constructively possessed everything "located in their private suite of executive offices." Br. of Appellants at 12. To give the principle so sweeping a construction would render it all but illimitable. Nor are we persuaded by appellants' limited analogy to notions of constructive posses-

sion of contraband, an analogy about which Judge Friendly expressed doubt in *Horowitz, see* 482 F.2d at 86, and about which we are also skeptical. We believe that any constructive possession exception must be narrow and applied only after a critical evaluation of the facts of the case. We need only decide here that this is not such a case. It is unlike *Kent,* where the party asserting the privilege retained great control and the subpoenaed party's relation to the documents sought was quite limited. Appellants would have us ignore Roe's role and focus exclusively on the Does' retention of constructive possession. We are more inclined to think that the proper emphasis should be on the degree of control ceded to the party the subpoena compels to act rather than the degree of control retained by the owner. *Cf. United States v. Jones,* 630 F.2d 1073, 1079–80 (5th Cir. 1980) (limiting *Couch* exception to situations where third party is a " 'naked possessor' " who makes no use of documents and has no knowledge of their content). Although the facts before us lie somewhere between *Kent* and *Colucci,* we conclude that Roe's relationship to the records places them sufficiently within his "custody or control" that the Does are not compelled by the subpoena directed to him.

This conclusion finds support in Roe's grand jury testimony that he alone maintained the records and kept them within or immediately outside of his own office. To the extent possible short of removing the books from the premises, Roe had virtually exclusive responsibility for them. Even if responsibility for these duties were less completely committed to Roe, the Does' relatively minimal contact with the documents would tip the scales against them. Roe's grand jury testimony leaves the unmistakable impression that the Does had no more than occasional and casual contact with the materials in question. Indeed, they may never have seen the separate ledger books that Roe maintained for each of their checking accounts. *See* J.App. at 119–22. Roe's subsequent affidavit about his duties, though artfully drafted, does not counter this impression. It is simply impossible to reconcile with Roe's testimony the Does' contention that they merely afforded Roe "access" to the documents, Br. of Appellants at 20, or that they did no more than "allo[w] [Roe] to use some of those documents under their direct supervision," *id.* at 21. The mere presence of the documents within the Does' office suite does not place them within their constructive possession to the extent necessary to leave compulsion upon them "substantially intact" in the sense contemplated by *Couch.* Whatever the degree and nature of "constructive possession" necessary to turn a subpoena *duces tecum* on an employee into compulsion of the employer, we are satisfied that the facts of this case do not amount to an infringement of the Does' Fifth Amendment rights.

The Does cite us to language extolling the personal integrity interests protected by the Fifth Amendment in arguing that our analysis should defer to the "private" nature of the papers and offices in issue. But the operative facts here revolve around Roe's relation to the documents and the concomitant lack of compulsion on the Does. Even if "there are certain documents no person ought to be compelled to produce at the Government's request," *Fisher,* 425 U.S. at 431–32, 96 S.Ct. at 1591 (Marshall, *J.,* concurring), the Does are not themselves being compelled to produce *anything* at the government's request. Our holding that the subpoena does not compel the Does makes it unnecessary to express an opinion on the status of what they assert are "private" papers. *See Maltby,* 800 F.2d at 984 (finding no compulsion and declining to consider private papers distinction).

### III. *The Fourth Amendment Claim*

■ The Does argue that the subpoena to Roe violates the Fourth Amendment because it requires him to conduct a search of their offices to find responsive documents. This argument is meritless.

■ Appellants are correct in observing that possible Fourth Amendment defects in a subpoena must be analyzed on a case-by-case basis, *see United States v. Lartey,* 716 F.2d 955, 961 (2d Cir.1983).

But Fourth Amendment protection from subpoenas *duces tecum* is narrowly limited to overbreadth and indefiniteness. *See Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946); *Horowitz,* 482 F.2d at 77. The subpoena at issue here seeks four specified classes of material within Roe's "custody or control." Appellants argue that Roe will have to rummage through their files and that the custody or control limitation is "more apparent than real." These contentions are simply not borne out by a fair reading of the subpoena, which is neither indefinite nor overbroad. We accordingly perceive no Fourth Amendment defect in the subpoena itself. Nor are we persuaded that this analysis should be different because the documents involved are "private" papers. As we read the subpoena, it does not require Roe to conduct any search.

The record before us furthermore gives no hint that any unusual circumstance in this case should change our reading of the subpoena. We have already observed that Roe had sufficient custody of, and knew where to find, at least some material responsive to the second subpoena. If he did not know the location of other documents, then *ipso facto* they can hardly have been within his custody or control and hence were not within the scope of the subpoena.[2] It defies common sense to contend that he should not be compelled to produce documents concededly within the scope of the subpoena because there are other non-responsive documents in the suite or because non-responsive and responsive materials are "commingled" in the office. Despite appellants' indignant protestations to the contrary, we see nothing in the record to suggest that Roe would have to examine material not within his custody or control to determine what *is* within the scope of the second subpoena.

## CONCLUSION

We have considered appellants' other contentions and find them to be without merit. The order appealed from is affirmed in all respects.

---

**2.** We note that the first subpoena was much more general than the second. Our analysis is restricted to the more specific second subpoena that is the subject of the district court's decision.

To the extent that appellants characterize "the subpoena" as requiring a search, it is conceivable that they are thinking of the first one. That subpoena is, of course, not before this Court.