### In re GRAND JURY SUBPOENA (ABC, INC.).

#### No.  09–MC–10183–PBS.

United States District Court,
D. Massachusetts.

Nov. 12, 2009.

James E. Arnold, United States Attorney's, Gregg D. Shapiro, Office of the United States, Sarah Wenhardt–Walsh, Libbyhoopes, P.C., Boston, MA, for Petitioner.

Frank A. Libby, Jr., Libbyhoopes, P.C., Boston, MA, for John Doe.

Kevin P. McGrath, Seyfarth Shaw, LLP, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I.  Introduction[1]

Intervenor John Doe ("Doe") challenges the decision of the Magistrate Judge granting the government's motion to compel disclosure of documents responsive to a grand jury subpoena issued to ABC, Inc. ("ABC") on May 12, 2009. He asserts that compelled production violates his Fifth Amendment privilege because the documents in question have remained in his constructive possession at all times, and because the documents have "intimate financial information, completely personal to Doe." After hearing and review of the submissions, the Court *DENIES* Doe's Motion to Set Aside the Order on the Motion to Compel.

---

1. To preserve the secrecy associated with grand jury matters, the Court has used fictitious names for all affected parties and minimally redacted the background facts.

## II. BACKGROUND

### A. Factual Background

Since approximately 2001, Doe and James Roe ("Roe") have operated a group of companies, including ABC.[2] The present grand jury investigation involves whether Roe paid income taxes on all of his business income, including income he may have received indirectly from Doe.

Jane Jones ("Jones") worked as an ABC employee at various times from April 2003 through February 2009. (Jones Aff. ¶ 1.) From April 2006 through February 2009, she worked as Doe's executive assistant, where her duties included paying his personal bills and managing other private financial matters for him. (*Id.* ¶¶ 2, 5–7.) Doe was the co-owner of ABC and Executive Vice President. (*Id.* ¶ 3.) During that time and at Doe's request, Jones created and maintained several personal non-ABC documents cataloging non-ABC income and expenses that Doe had paid to Roe. Although Doe asked her to keep this list on a sheet of paper, Jones maintained it on an electronic spreadsheet, which she labeled "Jane running total." (*Id.* ¶¶ 10, 11.) She stored this document on her company computer at ABC and in her private, password-protected folder on the computer server used by ABC and several other companies, including XYZ, Inc., which leased the file server from Dell. In turn, XYZ paid ABC a fee to administer the file server network for various companies. (Aff. Of John Smith, ¶¶ 12–13.) Jones informed Doe that she kept the tally on her desk top computer. (Jones Aff. ¶ 1.) As a result, no one at ABC but Jones and an IT administrator had access to the document. (Smith Aff. ¶ 10.) During her employment at ABC, Jones may also have had email communications concerning Doe's expenses. (Jones Aff. ¶¶ 18, 19.)

Jones left her employment at ABC in February 2009 and now works for Acme Marketing, a company owned and managed by ABC's former attorney. (Jones Aff. ¶ 1, Shapiro Supp. Decl., Ex. 1 at 11, June 25, 2009.) Some of the documents[3] have been disseminated to Acme, with which Doe has no affiliation at all. The government has issued a subpoena to Acme for the documents. Jones has consented to the document production. (Shapiro Decl., Ex. 2.)

Doe also has left ABC, although it is not clear when he did so. (ABC's Mot. To Set Aside, Ex. A at 1.) Doe now works at QRS, LLC, a company founded in 2009 and owned and managed by his brother; Doe's wife is QRS's sales director. (Shapiro Decl. Ex. 3 at 6, 11–12.)

The "running total" documents themselves remain in Jones' web folder on the network server formerly used by ABC, which has been in the possession of QRS since approximately March 2009, when ABC vacated its offices and ceased operations. (Smith Aff. ¶¶ 14, 15; Mot. Hr'g Tr. 8, Sep. 2, 2009.) When ABC vacated its business in March 2009, the file server was transferred directly to QRS, a company[4] not owned by ABC or Doe. However, as stated above, it was owned by Doe's brother and Doe now works there. (Smith Aff. ¶ 15.)

---

2. ABC also challenges the magistrate judge's opinion on the ground that it no longer controls the document.

3. Jones also has kept copies of at least two relevant documents on her Gmail account at Acme. (Mot. Hr'g Tr. 26, September 2, 2009.)

4. Corporations are a confusing maze. Doe's own filing refers to QRS as "a corporate holding entity wholly owned by Doe and Roe" and to another company, TUV, as "Doe's current employer." (Doe Mem. In Supp. Mot. To Set Aside at 3, n. 1.)

## B. Procedural Background

On May 12, 2009, the government served a grand jury subpoena on ABC, the first specification of which called for production of the following:

For the period from January 1, 2003, through the present, all documents concerning payments or transfers by Doe to, or on behalf of, Roe. The documents requested include, without limitation, all electronic versions of the spreadsheet entitled "Jane Running Totals," and all e-mail and other communications concerning such payments or transfers.

(Shapiro Decl. Ex. 1). On May 20, 2009, ABC's counsel informed the government that ABC had located several documents possibly responsive to the first specification of the May 12 subpoena. (Shapiro Decl. ¶ 3.) However, ABC later claimed that it could not produce the requested documents because they were located on a computer server that had since been moved to QRS's office (*Id.* ¶ 4, Ex. 3 at 11–12.)

The government filed a motion to compel disclosure of the responsive documents on June 25, 2009. Doe requested leave to intervene in the case on July 15, 2009, asserting a Fifth Amendment privilege over the responsive documents, which both he and ABC claim belong to him exclusively. A hearing on the government's motion to compel and Doe's motion to intervene was held before Magistrate Judge Marianne Bowler on August 5, 2009. On August 7, 2009, Judge Bowler issued an order granting Doe's motion to intervene and granted the government's motion to compel. ABC and Doe each filed motions to set aside Judge Bowler's August 7 order, which the government opposes. A hearing

on those motions was held before this Court on September 2, 2009.

Doe and ABC argue that the "running total" documents are the property not of ABC, the target of the subpoena, but of Doe. ABC acknowledges that in the past it has responded to previous subpoenas without objecting to production based on the technical distinction between itself and related companies like QRS. (Shapiro Decl. ¶ 4.) However, it now asserts that it no longer has access to the documents because they are on a computer server that it used with the permission of XYZ and that now belongs to QRS. Doe argues that, as his property, the documents are protected from disclosure pursuant to the Fifth Amendment's protection against self-incrimination. Due to the disputed fact issues concerning ABC's claim that it lacks possession or control of the documents, the parties pragmatically suggested that the Court first resolve only the question of Doe's Fifth Amendment privilege.

## III. DISCUSSION[5]

### A. Act of Production Privilege

█ Doe argues that compelled production of the tally sheets would violate his Fifth Amendment privilege because he had constructive possession of the documents on his secretary's computer.

█ The starting point for the analysis is *Couch v. United States*, 409 U.S. 322, 335–36, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), which addressed the question whether a taxpayer may invoke the Fifth Amendment privilege against self-incrimination to prevent the compulsory production of her business and tax records in the possession of her accountant. Rejecting the claim of privilege, the Supreme Court

---

**5.** The parties have not directly addressed the standard of review. Here, because Doe's objection based on the Fifth Amendment privilege raises only questions of law, the Court reviews them de novo.

held the "ingredient of personal compulsion" against the accused was lacking because the order was directed at the accountant, who was the "only one compelled to do anything." *Id.* at 329, 93 S.Ct. 611. The accused's invocation of the Fifth Amendment was improper because "there was no enforced communication of any kind from any accused or potential accused." *Id.* at 331, 93 S.Ct. 611; *see also id.* at 336, 93 S.Ct. 611 ("The criterion for Fifth Amendment immunity remains not the ownership of property but the physical or moral compulsion exercised.") (internal quotation marks omitted). The Court held:

> We do indeed believe that actual possession of documents bears the most significant relationship to Fifth Amendment protections against government compulsions upon the individuals accused of crime. Yet *situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact.*

*Id.* at 333, 93 S.Ct. 611 (emphasis added). The Fifth Amendment rights of a potential accused party become "fixed" when the summons is served, and a subsequent transfer does not alter them. *Id.* at 329 n. 9, 93 S.Ct. 611. The Supreme Court noted that it was "a significant point" that the accountant was an independent contractor, not a full-time employee. *Id.* at 334 n. 18, 93 S.Ct. 611. It also declined to address cases involving "mere custodial safekeeping of records." *Id.* at 335 n. 16, 93 S.Ct. 611; *see also Fisher v. United States,* 425 U.S. 391, 397, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("The taxpayer's privilege under [the Fifth] Amendment is not violated by enforcement of the summonses involved in these cases because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything and certainly would not 'compel' the taxpayer to be a 'witness' against himself."). The Supreme Court, though, did not further delineate the contours of constructive possession in a Fifth Amendment context. *See In re Horowitz,* 482 F.2d 72, 86 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) ("[I]t seems highly unlikely that [the *Couch* Court] was viewing the term as broadly as courts have done in other contexts....").

Since *Couch,* courts have taken a narrow view of constructive possession. In *United States v. Hershenow,* 680 F.2d 847 (1st Cir.1982), the First Circuit rejected an argument by the accused that seized records were in his constructive possession because he had placed them in the hands of another merely for custodial safekeeping. The First Circuit held that a Fifth Amendment argument must fail where the accused was not "the object of any personal compulsion" and was "not required to do anything to facilitate the seizure." 680 F.2d at 857. There, a physician under investigation for insurance fraud gave a box of records to a nursing home's maintenance man, who later placed them in a storage barn. *Id.* at 854. The administrator of the nursing home was subpoenaed. The court held that the "casual circumstances" surrounding the entrustment of the records belied the doctor's claim of constructive possession and indicated instead that he effectively relinquished control over the box and its contents vis-a-vis any other parties who could gain access to it. *Id.* at 857. The court, however, distinguished the line of cases involving "third-party possession where the owner merely arranged for custody of the records in a bank and retained the right to immediate possession." *Id.* at 856–57.

*In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987,* 834 F.2d 1128 (2d Cir.1987), is more closely analogous to

the instant case. There, a grand jury investigated allegations that a husband and wife had "diverted corporate funds to personal use while falsifying records to conceal the diversion and evade federal taxation." 834 F.2d at 1129. It issued a subpoena to the couple's administrative assistant requiring him to produce personal financial documents related to his employers' alleged activities. *Id.* at 1129–30. The assistant's duties included business matters, but "he also look[ed] after the Does' personal checking account." *Id.* at 1129. In that context:

> [H]e wr[ote] checks for the Does' signatures, ke[pt] check registers, reconcile[d] monthly statements, prepare[d] deposits and maintain[ed] a separate ledger book for each account. The checkbooks, registers and ledgers are kept in a file cabinet in his office within the Does' suite; cancelled checks and past statements are filed in a credenza in the hallway outside his office. The Does' own offices are located elsewhere within the suite.

*Id.* The court considered the Does' constructive possession argument with respect to the personal financial records in question and concluded that "[t]o the extent possible short of removing the books from the premises, [the assistant] had virtually exclusive responsibility for them." *Id.* at 1133. The court reasoned that "[e]ven if responsibility for these duties were less completely committed to [the assistant], the Does' relatively minimal contact with the documents would tip the scales against them," emphasizing that "the Does had no more than occasional and casual contact with the materials in question." *Id.*

Other courts have similarly rejected claims of Fifth Amendment privilege based on an assertion of constructive possession in the Fifth Amendment context. *See In re Grand Jury Subpoena (Maltby),* 800 F.2d 981, 982–84 (9th Cir.1986) (finding no constructive possession of former police chief's personal documents left in police department's possession); *In re Grand Jury Empanelled (Colucci),* 597 F.2d 851, 862–63 (3d Cir.1979) (finding no constructive possession where office manager prepared many of the records and had full access to them); *Horowitz,* 482 F.2d at 87 (finding no constructive possession where accountant held access to client's personal financial records). *But cf. In re Grand Jury Subpoena (Kent),* 646 F.2d 963, 966, 969 (5th Cir. Unit B June 1981) (holding that sole proprietor who personally participated in office management maintained constructive possession of records subpoenaed from business comptroller who had access to them but did not exercise exclusive possession and control as against owner).

The government argues that Doe has not retained constructive possession of the running tally sheet because the personal assistant who created and maintained the running tally sheet for him stored it in her own, personal electronic folder on the company's computer network. Doe had no role in the day-to-day management or use of this document, and he himself could not access it while it was stored in Jones' personal folder, to which only she had the password. At the time the subpoena was served in May 2009, there is no evidence Doe had retained any access to the document, which apparently was in the possession and control of QRS and/or ABC.[6] While Doe may have been working at QRS, the tally remained in Jones' web folder on the computer server, secured by a password that Doe did not have, months after Jones had ceased working both as

---

6. It is disputed whether ABC also had control over the document, but there is no evidence that Doe had control over the document at the time the subpoena issued.

Doe's assistant and for ABC altogether. Because Doe has relinquished substantial control over the tally sheet and is in no sense compelled to produce the documents, he did not have constructive possession of it at the time the subpoena was served. *See In re Grand Jury Subpoena,* 973 F.2d 45, 51 (1st Cir.1992) ("[T]he potential for self-incrimination arises only from an act of production, i.e., from the tacit concession that the records exist, are in Doe's possession, and are authentic.") (quoting *Fisher,* 425 U.S. at 410–411, 96 S.Ct. 1569 (1976)).

## B. Content-based Privilege

■ Doe asserts a second basis of Fifth Amendment privilege focused on the content of the document at issue. He relies on *Boyd v. United States,* 116 U.S. 616, 633, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which held that it was unable "to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." The Supreme Court cited the case with approval as recently as thirty-five years ago. *See Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) ("In [*Boyd*], we held that 'any forcible and compulsory extortion of a man's own testimony, or of his private papers' . . . would violate the Fifth Amendment. . . . The privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life.") (quoting *Boyd,* 116 U.S. at 630, 6 S.Ct. 524) (internal citations omitted). However, subsequent cases suggest that the vitality of Boyd is in question.

In *Fisher v. United States,* 425 U.S. 391, 407, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court declared expressly that several of the principles in *Boyd* "[had] not stood the test of time," though it addressed the doctrine in context of tax records made by the claimants' accountants, which were then in the possession of their attorneys. The Court explained that the Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications." *Id.* at 409, 96 S.Ct. 1569. The Court did acknowledge the "special problems of privacy which might be presented by subpoena of a personal diary." *Id.* at 401, n. 7, 96 S.Ct. 1569. In *United States v. Doe,* 465 U.S. 605, 611–12, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the Supreme Court held that the contents of business records, which had been voluntarily prepared and did not require the claimant to reaffirm the truth of their contents, were not privileged. *Id.* at 612, 104 S.Ct. 1237 ("Although the contends of a document may not be privileged, the act of producing the document may be.") (citing *Fisher,* 425 U.S. at 410, 96 S.Ct. 1569).

*Doe* and *Fisher* dealt *Boyd* a near-mortal wound. *Compare id.* at 618, 104 S.Ct. 1237 (O'Connor, J., concurring) (reasoning that "the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind") *with id.* (Marshall, J., dissenting in part) ("[T]he documents at stake here are business records which implicate a lesser degree of concern for privacy interests than, for example, personal diaries.") (internal citations omitted). *Cf. United States v. Hubbell,* 530 U.S. 27, 55–56, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (Thomas, J., concurring) (expressing disagreement with *Fisher* and willingness to reevaluate the *Boyd* doctrine).

While subsequent First Circuit cases have not foreclosed the possibility of a content-based protection for personal documents, they have reaffirmed the limited

scope of such a doctrine. In *In re Steinberg*, 837 F.2d 527 (1st Cir.1988), the court stated, "*Boyd*, at best, must be read in a very limited fashion. If the contents of private papers are protected at all—a matter as to which we express no opinion today—'it is only in rare situations, where compelled disclosure would break the heart of our sense of privacy.'" *Id.* at 530, 6 S.Ct. 524 (quoting *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir.1985)); *see also United States v. Feldman*, 83 F.3d 9, 14 (1st Cir.1996) (holding voluntarily prepared letters of apology not privileged under the Fifth Amendment); *United States v. Katin*, 109 F.R.D. 406, 408–09 (D.Mass. 1986) (holding that *Boyd's* protection extends only to such "[i]ntimate personal papers" as "personal photographs, diaries, memoirs and correspondence...."). *Compare In re Grand Jury Proceedings on February 4, 1982*, 759 F.2d 1418, 1419–20 (9th Cir.1985) (holding that the contents of documents, whether business or personal, are not protected by the Fifth Amendment at all), *with United States v. (Under Seal)*, 745 F.2d 834, 840 (4th Cir.1984), *vacated as moot*, 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155 (1985) (holding that the Fifth Amendment protects all papers held by an individual in a personal, rather than a representative, capacity).

The running tally sheet at issue here is more akin to a check register or other personal financial record than to an intimately personal document, like a diary. *See Butcher*, 753 F.2d at 469 ("The records at issue in the instant case are personal records, but only those personal records which relate to property.... Information relating to property of the estate is not so intimately personal as to evoke serious concern over privacy interests."); *United States v. McCollom*, 651 F.Supp. 1217, 1221 (N.D.Ill.1987), *aff'd* 815 F.2d 1087 (7th Cir.1987) ("Whatever is left of the holding in *Boyd*, it does not extend to

financial records such as checks, check registers, or information reflecting withdrawals from accounts."). *But cf. United States v. (Under Seal)*, 745 F.2d at 836, 840 (applying *Boyd* to such personal records as "records of purchases, trades, sales, receipts, gifts, and distributions of controlled substances").

■ Doe offered an in camera review of the documents to prove-up his claim of privilege. However, the subpoena seeks documents concerning payments or transfers by Doe to, or on behalf of, Roe. The affidavit of his executive assistant, Jane Jones, states it is a tally of non-ABC income and expenses of Doe and concedes she may have discussed the income and expenses with Roe and/or his executive assistant. While her affidavit is not entirely clear, she helped Doe with various non-ABC matters involving other companies that Mr. Doe owned or with which he was associated. Although she did personal tasks for Doe, she did not state that her tally included truly personal expenses (like medical payments). In any event, the government is not looking for intimate personal expenditures, but for payments or transfers by Doe to, or on behalf of, Roe. The fact that the expenses were not corporate expenses of ABC but instead include Doe's other financial concerns does not render them intimate personal matters. Whatever vestige of *Boyd* remains good law, Doe has not demonstrated or proffered that the documents at issue evoke the sort of privacy interests necessary to invoke content-based Fifth Amendment protection. Without such a predicate, no in camera review is appropriate.

## ORDER

Intervenor Doe's Motion to Set Aside the Magistrate Judge's Order on the Mo-

tion to Compel Production of Documents (Docket Nos. 18 and 20) is *DENIED.*